# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# COLUMBUS DIVISION

| | |
|---|---|
| VERLAN FIRE INSURANCE COMPANY, as subrogee of Yenkin-Majestic Paint Corporation<br>440 Lincoln St.<br>Worcester, MA 01654<br><br>AND<br><br>ILLINOIS UNION INSURANCE COMPANY, as subrogee of Yenkin-Majestic Paint Corporation<br>525 West Monroe St.<br>Chicago, Il 60661<br><br>    Plaintiffs,<br><br>v.<br><br>DEFABCO, INC.<br>c/o Edmen Eubanks-Registered Agent<br>7840 Palmer Rd.<br>Reynoldsburg, OH 43068<br><br>AND<br><br>KABIL ASSOCIATES, INC.<br>c/o Shashi Savla-Registered Agent<br>5900 Sharon Woods Blvd.<br>Columbus, OH 43229<br><br>    Defendants. | CASE NO.:<br><br>JUDGE:<br><br><br><br><br><br><br><br>**COMPLAINT AT LAW**<br><br>DEMAND FOR JURY TRIAL |

NOW COME Plaintiffs, VERLAN FIRE INSURANCE COMPANY (hereinafter "Verlan"), as subrogee of Yenkin-Majestic Paint Corporation (hereinafter "YM"), and Illinois Union Insurance Company (hereinafter "Illinois Union"), as subrogee of YM, by and through its attorneys, and complain of Defendants DEFABCO, INC. (hereinafter "DEFABCO") and KABIL ASSOCIATES, INC. (hereinafter "KABIL"), and for their Complaint at Law, state the following:

## THE PARTIES

1. Plaintiff Verlan is, and at all times relevant, a New Hampshire company, duly authorized to transact and conduct business in the State of Ohio, with a principal place of business at 440 Lincoln Street, Worcester, Massachusetts.

2. At all times relevant, Plaintiff Verlan was the property insurer for YM.

3. Plaintiff Illinois Union is, and at all times relevant, an Illinois company, duly authorized to transact and conduct business in the State of Ohio, with a principal place of business at 525 West Monroe Street, Chicago, Illinois.

4. At all times relevant, Plaintiff Illinois Union provided insurance coverage to YM for pollution and environmental claims.

5. Upon information and belief, Defendant DEFABCO is an Ohio corporation authorized and licensed to do business within the State of Ohio, with a principal place of business at 3765 East Livingston Avenue, Columbus, Ohio.

6. Upon information and belief, Defendant DEFABCO is a custom metal fabricator and industrial contractor that designs, manufactures, tests, and inspects metal fabrications in the manufacturing, industrial fabrication, and construction industries.

7. Upon information and belief, Defendant KABIL is an Ohio corporation authorized and licensed to do business within the State of Ohio, with a principal place of business at 5900 Sharon Woods Boulevard #B, Columbus, Ohio.

8. Upon information and belief, Defendant KABIL holds itself out as a multi-disciplinary professional design and engineering company.

9. Verlan and Illinois Union are informed and believe, and on the basis of that information and belief, allege, at all relevant times in this Complaint, Defendants, and each of

them, were the agents and/or employees of their co-Defendants, and in doing the things alleged in this Complaint, were acting within the course and scope of that agency and/or employment.

## JURISDICTION

10. An actual controversy of a justiciable nature exists between Plaintiffs Verlan and Illinois Union and the Defendants DEFABCO and KABIL. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship among Plaintiffs Verlan and Illinois Union and the Defendants DEFABCO and KABIL, and the amount in controversy exceeds $75,000.00, exclusive of interest, cost, and fees.

11. This Court has personal jurisdiction over Defendant DEFABCO as its principal place of business is located within this judicial district.

12. This Court has personal jurisdiction over Defendant KABIL as its principal place of business is located within this judicial district.

## VENUE

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as Defendants DEFABCO AND KABIL are subject to personal jurisdiction in this judicial district, and because a substantial part of the events and activities giving rise to Plaintiffs Verlan and Illinois Union's claims occurred in this judicial district.

## COMMON ALLEGATIONS

14. At all times relevant, YM owned and operated a factory located at 1920 Leonard Avenue, Columbus, Ohio (hereinafter "YM resin factory"). YM manufactured industrial coatings, architectural coatings, and coatings resins (hereinafter "resin" or "resins") for use in industrial and commercial paint products.

15. YM utilized a large vessel/kettle (hereinafter "K3") for the resin manufacturing process.

16. K3 is a metallic reactor, heated by a gas furnace, which is used to produce alkyd resin.

17. During the course of heating, K3's contents create pressure.

18. During the course of heating, vapors vent through an overhead system that condenses most vapors and returns them to the kettle as liquid, with residual amounts of vapor venting to the atmosphere from the condenser.

19. The piping system and kettle contain an emergency pressure relief system which is piping attached to the top of the vessel, allowing for any over-pressurized vapor and vessel contents to escape through the piping.

20. The emergency pressure relief system contains a rupture disc which is designed to open/rupture at a designated pressure (PSI), thereby establishing a flow path for the vessel contents from the reactor to the roof's catch tank, to prevent flammable vapors and contents from building pressure inside the kettle itself.

21. The rupture disk located on K3 is a safety device, designed to rupture if pressure reaches 16.5 PSIG. If sufficient pressure is reached, the rupture disc is designed to rupture and safely allow over-pressurized vessel vapor and vessel contents through the piping and into the catch tank.

22. The design ensures K3 operates within proper pressures, and if exceeded, prevents the free flow of flammable, ignitable vapors through the YM resin factory.

23. Upon information and belief, YM conducted a Kettle 3 Hopper Transition Project for portions of the top of K3 in 2020.

24. Upon information and belief, in October of 2020, YM retained Defendant DEFABCO to design, manufacture, and install a new manway for K3.

25. Upon information and belief, Defendant DEFABCO contracted with Defendant KABIL to provide engineering assistance in the design and manufacture of the new manway for K3.

26. Upon information and belief, during the course of numerous communications and discussions, YM provided Defendants DEFABCO and KABIL with the design operating pressures which K3 could safely operate within.

27. Specifically, upon information and belief, YM instructed Defendants DEFABCO and KABIL to design the manway to withhold pressures of 16 PSIG.

28. Upon information and belief, Defendant DEFABCO, in conjunction with Defendant KABIL, designed and manufactured the new manway for K3.

29. Upon information and belief, in December 2020, Defendant DEFABCO installed the manway by welding the manway opening to the top of K3.

30. Upon information and belief, during the initial use of K3 in early January 2021, YM noted the seal on the newly constructed and installed manway was insufficient on at least two occasions which required YM to replace the gasket material.

31. Upon information and belief, YM apprised DEFABCO of all immediate issues with the newly constructed and installed manway as they occurred, yet DEFABCO never expressed concern, recommended additional testing, or proposed that production should stop.

32. On April 8, 2021, just after midnight, an explosion occurred at the YM resin factory resulting in subsequent fires and smaller secondary explosions.

33. Upon information and belief, the initial explosion occurred as a result of flammable vapors escaping from K3's new manway and progressing through the YM resin factory.

34. Upon information and belief, the flammable vapors escaped through the new manway because it failed to contain pressurized vapors even though the pressure within K3 did not exceed its allowable operating pressures.

35. Once the flammable vapors escaped through the manway, they migrated throughout the YM resin factory and were ignited by one or more potential ignition sources within the YM facility.

36. Pursuant to YM's policy of insurance with Plaintiff Verlan, YM made claims seeking indemnification and reimbursement for property and economic damages resulting from the explosion at the YM resin factory. Accordingly, Plaintiff Verlan was required to and did pay YM an amount in excess of $100,000,000.

37. In consideration of said payments, and in equity, Plaintiff Verlan became an actual bona fide subrogee of YM and became subrogated to all rights, claims, and interests that YM may have against any person or entity responsible for this occurrence and resulting damage.

38. Pursuant to YM's policy of insurance with Plaintiff Illinois Union, YM made claims seeking indemnification and reimbursement for pollution and environmental damages resulting from the explosion at the YM resin factory. Accordingly, Plaintiff Illinois Union was required to and did pay YM an amount in excess of $1,975,000 with the expectation that additional damages resulting from the explosion remain to be paid.

39. In consideration of said payments, and in equity, Plaintiff Illinois Union became an actual bona fide subrogee of YM and became subrogated to all rights, claims, and interests

that YM may have against any person or entity responsible for this occurrence and resulting damage.

## COUNT I
## NEGLIGENCE
## DEFABCO

40. Plaintiffs Verlan and Illinois Union reallege and incorporate by reference the allegations contained in Paragraphs 1 through 39 as though fully set forth in this Count I.

41. At all times relevant, Defendant DEFABCO had a duty to exercise reasonable care while designing, manufacturing, testing, installing, and inspecting the manway for K3.

42. Notwithstanding said duty, and in breach thereof, Defendant DEFABCO, by and through its employees, agents, subcontractors, and representatives, was negligent in one or more of the following ways:

    a. Carelessly and negligently installed the manway without ensuring it was compliant with the YM design requirements;

    b. Carelessly and negligently failed to oversee the construction and installation of the manway so that it was compliant with the necessary pressure requirements;

    c. Carelessly and negligently failed to hire and/or train competent, qualified, careful, and prudent employees capable of performing the inspection, testing and installation of the manway in a safe and workmanlike manner in accord with industry standards and procedures;

    d. Carelessly and negligently failed to properly inspect and/or test the installation of the manway;

    e. Carelessly and negligently failed to comply with all applicable codes and regulations;

    f. Carelessly and negligently failed to inspect the manway to ensure it was safe for usage on K3;

    g. Failed to design the manway consistent with the design specifications regarding pressure requirements;

    h.    Failed to manufacture the manway consistent with the design specifications as it related to pressure requirements;

    i.    Failed to test the manway to ensure it complied with the design specifications regarding the pressure requirements;

    j.    Failed to evaluate the design of the manway despite obtaining additional information from YM regarding operations; and/or

    k.    Was otherwise negligent.

43. On April 8, 2021, as a direct and proximate result of the acts or omissions on the part of Defendant DEFABCO, Plaintiffs Verlan and Illinois Union, as subrogees of YM, suffered damages, including the cost of repair and replacement of the real property and clean-up of pollution and environmental damage in an amount in excess of $100,000,000.

WHEREFORE, Plaintiffs VERLAN FIRE INSURANCE COMPANY and ILLINOIS UNION INSURANCE COMPANY, as subrogees of Yenkin Majestic, request that judgment be entered in their favor and against Defendant DEFABCO in an amount in excess of One Hundred Million Dollars ($100,000,000) plus costs, and for such other or further relief as this Court deems equitable and just.

### COUNT II
### NEGLIGENCE
### KABIL

44. Plaintiffs Verlan and Illinois Union reallege and incorporate by reference the allegations contained in Paragraphs 1 through 43 as though fully set forth in this Count II.

45. At all times relevant, Defendant KABIL had a duty to exercise reasonable care while designing the manway for K3.

46. Notwithstanding said duty, and in breach thereof, Defendant KABIL, by and through its employees, agents, subcontractors, and representatives, was negligent in one or more of the following ways:

a. Carelessly and negligently installed the manway without ensuring it was compliant with the YM design requirements;

b. Carelessly and negligently failed to oversee the construction and installation of the manway to ensure it was compliant with the necessary pressure requirements;

c. Carelessly and negligently failed to hire and/or train competent, qualified, careful, and prudent employees capable of performing the design of the manway in a safe and workmanlike manner in accord with industry standards and procedures;

d. Carelessly and negligently failed to properly inspect, test and/or calculate the design specifications of the manway;

e. Carelessly and negligently failed to comply with all applicable codes and regulations;

f. Carelessly and negligently failed to inspect the manway to ensure it was safe for usage on K3;

g. Failed to design the manway consistent with the design specifications regarding pressure requirements;

h. Failed to properly test the manway to ensure it was consistent with the design specifications as it related to pressure capacity;

i. Failed to inspect the manway to ensure it complied with the design specifications regarding pressure capacity;

j. Failed to evaluate the design of the manway despite obtaining additional information from YM regarding operations; and/or

k. Was otherwise negligent.

47. On April 8, 2021, as a direct and proximate result of the acts or omissions on the part of Defendant KABIL, Plaintiffs Verlan and Illinois Union, as subrogees of YM, suffered damages, including the cost of repair and replacement of the real property and clean-up of pollution and environmental damage in an amount in excess of $100,000,000.

WHEREFORE, Plaintiffs VERLAN FIRE INSURANCE COMPANY and ILLINOIS UNION INSURANCE COMPANY, as subrogees of Yenkin Majestic, request that judgment be

entered in their favor and against Defendant KABIL in an amount in excess of One Hundred Million Dollars ($100,000,000) plus costs, and for such other or further relief as this Court deems equitable and just.

## COUNT III
## BREACH OF IMPLIED WARRANTY OF WORKMANLIKE MANNER
## DEFABCO

48. Plaintiffs Verlan and Illinois Union reallege and incorporate by reference the allegations contained in Paragraphs 1 through 47 as though fully set forth in this Count III.

49. Defendant DEFABCO, at all relevant times, was under a duty to perform its services and work in a skillful, careful, diligent, and workmanlike manner, adhering to the acceptable standards in the metal fabrication and installation industry at the time the work was performed.

50. In violation of said duties, Defendant DEFABCO is liable for its breach of the implied warranty of construction in a workmanlike manner through the following acts or omissions, including but not limited to:

    a. Failure to properly perform work at YM resin factory in a workmanlike manner, evincing the skill and knowledge of a reasonable tradesperson in the metal fabrication and installation industry;

    b. Failure to properly supervise work performed at the YM resin factory by its employee(s) to assure the work was completed in a good and workmanlike manner, evincing the skill and knowledge of a reasonable tradesperson in the metal fabrication and installation industry; and/or

    c. Failure to properly inspect all work performed at the YM resin factory to ensure that it was being completed in a good and workmanlike manner, evincing the skill and knowledge of a reasonable tradesperson in the metal fabrication and installation industry.

51. On April 8, 2021, as a direct and proximate result of the acts or omissions on the part of Defendant DEFABCO, Plaintiffs Verlan and Illinois Union, as subrogees of YM, suffered

damages, including the cost of repair and replacement of the real property and clean-up of pollution and environmental damage in an amount in excess of $100,000,000.

WHEREFORE, Plaintiffs VERLAN FIRE INSURANCE COMPANY and ILLINOIS UNION INSURANCE COMPANY, as subrogees of Yenkin Majestic, request that judgment be entered in their favor and against Defendant DEFABCO in an amount in excess of One Hundred Million Dollars ($1,000,000) plus costs, and for such other or further relief as this Court deems equitable and just.

## COUNT IV
## STRICT PRODUCT LIABILITY
## DEFABCO

52. Plaintiffs Verlan and Illinois Union reallege and incorporate by reference the allegations contained in Paragraphs 1 through 51 as though fully set forth in this Count IV.

53. Upon information and belief, Defendant DEFABCO was engaged in the business of designing, manufacturing, testing, inspecting metal fabrications, including the manway for YM.

54. The subject manway which was designed, manufactured, sold, and distributed into the stream of commerce by Defendant DEFABCO, was not modified, changed, altered, or abused by YM.

55. Defendant DEFABCO knew and intended for the manway to be installed on K3 and further knew of the specific uses, purposes, and requirements for which said manway would be utilized.

56. Defendant DEFABCO designed, tested, inspected, manufactured, sold, and/or distributed into the stream of commerce the subject manway in a dangerous and defective condition, which catastrophically failed due to a defect.

11

57. Defendant DEFABCO designed, tested, inspected, manufactured, sold, and/or distributed into the stream of commerce the subject manway in a defective condition, unreasonably dangerous to YM and its employees.

58. Defendant DEFABCO knew, or should have known, the subject manway would, and did, reach YM without substantial change in the condition in which it was originally sold.

59. At all relevant times, YM used the subject manway for its reasonably foreseeable and intended purpose.

60. When the subject manway left Defendant DEFABCO's control and was placed into the stream of commerce, it was unreasonably dangerous and defective, in light of its foreseeable and intended use, in one or more of the following ways:

    a. The subject manway was defective in its design in that the manway did not perform safely, and in fact catastrophically failed;

    b. The subject manway was defectively designed because it was unsafe to an extent beyond that which would be contemplated by YM;

    c. The manway and/or its component parts contained manufacturing defects in that the manway differed from YM's design specifications;

    d. The subject manway and/or its component parts were designed, manufactured, and/or assembled without proper testing;

    e. The subject manway was defective in that it failed to hold the called for pressure specification for no apparent reason during its normal use; and/or

    f. The subject manway was otherwise unreasonably dangerous.

61. The aforementioned defects or defective conditions existed at the time the subject manway left the possession and/or control of Defendant DEFABCO.

62. The defective, unreasonably dangerous and unsafe condition of the subject manway as aforesaid was a direct and proximate cause of the damages sustained by Plaintiffs Verlan and Illinois Union.

12

63. For these reasons, Defendant DEFABCO is strictly liable to Plaintiffs Verlan and Illinois Union.

64. As a direct and proximate result of one or more of the aforementioned defective and unreasonably dangerous conditions, the subject manway failed to hold pressure, resulting in a release of flammable vapors which became ignited, causing consequential and incidental damages including clean-up costs, repair, and other associated expenses.

65. On April 8, 2021, as a direct and proximate result of the acts or omissions on the part of Defendant DEFABCO, Plaintiffs Verlan and Illinois Union, as subrogees of YM, suffered damages, including the cost of repair and replacement of the real property and clean-up of pollution and environmental damage in an amount in excess of $100,000,000.

WHEREFORE, Plaintiffs VERLAN FIRE INSURANCE COMPANY and ILLINOIS UNION INSURANCE COMPANY, as subrogees of Yenkin Majestic, request that judgment be entered in their favor and against Defendant DEFABCO in an amount in excess of One Hundred Million Dollars ($100,000,000) plus costs, and for such other or further relief as this Court deems equitable and just.

## COUNT V
## BREACH OF ORAL CONTRACT – THIRD PARTY BENEFICIARY
## KABIL

66. Plaintiffs Verlan and Illinois Union reallege and incorporate by reference the allegations contained in Paragraphs 1 through 65 as though fully set forth in this Count V.

67. Defendants DEFABCO and KABIL entered into a legally enforceable oral contract (hereinafter "subject contract") for KABIL to provide engineering services in the design and manufacture of the new manway for K3.

68. Defendants KABIL knew of the intended use of the new manway for K3 at the YM resin factory, as it worked directly with both Defendant DEFABCO and YM to specify and engineer the design and manufacturer of the new manway for YM's use.

69. Defendants DEFABCO and KABIL intended the subject contract primarily and directly to benefit YM, thereby making YM a third party beneficiary of the subject contract.

70. YM and Defendant DEFABCO relied upon Defendant KABIL's expertise and skill in specifying, engineering, designing, and/or manufacturing the appropriate manway design for K3.

71. Defendant KABIL was specifically consulted for this portion of the Kettle 3 Hopper Transition Project due to KABIL's purported expertise.

72. Defendant KABIL breached the subject contract by failing to specify and engineer the design and manufacture of the new manway in compliance with the applicable industry standards and codes, and in a safe and workmanlike manner so as to prevent it from failing to hold the called for pressure during its normal use.

73. As a direct and proximate result of Defendant KABIL's breach of contract, the subject manway failed to hold pressure, resulting in a release of flammable vapors which became ignited, causing consequential and incidental damages including clean-up costs, repair, and other associated expenses.

74. On April 8, 2021, as a direct and proximate result of the breach of contract on the part of Defendant KABIL, Plaintiffs Verlan and Illinois Union, as subrogees of YM, suffered damages, including the cost of repair and replacement of the real property and clean-up of pollution and environmental damages in an amount in excess of $100,000,000.

WHEREFORE, Plaintiffs VERLAN FIRE INSURANCE COMPANY and ILLINOIS UNION INSURANCE COMPANY, as subrogees of Yenkin Majestic, request that judgment be entered in their favor and against Defendant KABIL in an amount in excess of One Hundred Million Dollars ($100,000,000) plus costs, and for such other or further relief as this Court deems equitable and just.

Respectfully submitted,

*/s/ Leslie E. Wargo*
Leslie E. Wargo (0073112)
Wargo Law, LLC
1501 North Marginal Road, Suite 182
Cleveland, Ohio 44114-3738
Telephone: (216) 403-3350
Facsimile: (216) 744-1816
Email: Leslie@wargo-law.com
www.wargo-law.com

*Attorney for Plaintiff Verlan Fire Insurance Company as subrogee of Yenkin-Majestic Paint Corporation and Plaintiff Illinois Union Insurance Company as subrogee of Yenkin-Majestic Paint Corporation*


        */s/ Mark E. Utke* (per consent)
Mark E. Utke, Esquire (Ohio Bar #0088559)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19102
Tel: (215) 665-2164
Fax: (215) 701-2164
Email: MUtke@cozen.com

*Attorney for Plaintiff Illinois Union Insurance Company as subrogee of Yenkin-Majestic Paint Corporation*

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury with the maximum allowable amount of jurors.

*/s/Leslie E. Wargo*
Leslie E. Wargo (0073112)

Case: 2:23-cv-01107-SDM-KAJ Doc #: 1 Filed: 03/29/23 Page: 16 of 16  PAGEID #: 16